USCA1 Opinion

 

 United States Court of Appeals
 For the First Circuit
 ____________________

No. 99-1019

 ARLISS J. HILL, VERONA A. JOHNSON,
 TRUSTEE WILLIAM A. JOHNSON REVOCABLE LIVING TRUST
 AND CAROL J. HENNUM, TRUSTEE CAROL J. HENNUM
 LIVING TRUST d/b/a MOUNTAIN VALLEY MALL ASSOCIATES,
 Plaintiffs, Appellants,

 v.

 TOWN OF CONWAY,
 Defendant, Appellee.

 ____________________

 APPEAL FROM THE UNITED STATES DISTRICT COURT

 FOR THE DISTRICT OF NEW HAMPSHIRE

 [Hon. Paul J. Barbadoro, U.S. District Judge]

 ____________________

 Before

 Selya, Circuit Judge,

 Coffin, Senior Circuit Judge,

 and Pollak, Senior District Judge.

 _____________________

 Randall F. Cooper and Cooper, Deans & Cargill, P.A. on brief,
for appellants.
 Russell F. Hilliard, David P. Slawsky, and Upton, Sanders &
Smith on brief, for appellee.

 ____________________

 October 4, 1999
 ____________________ POLLAK, District Judge. The question presented by this
appeal is whether the District Court for the District of New
Hampshire was correct in dismissing, for lack of subject matter
jurisdiction, a suit under 42 U.S.C. 1983, brought by plaintiffs,
as owners of the Mountain Valley Mall in North Conway, New
Hampshire, against the Town of Conway ("Town"). In their 1983
suit plaintiffs have alleged that the Town effectuated an
uncompensated -- and hence unconstitutional -- "taking" of Mountain
Valley Mall Boulevard, an access road connecting Mountain Valley
Mall to U.S. 302, a major highway. After reviewing the procedural
history of the challenges to the Town's action mounted by the
plaintiffs prior to filing the 1983 suit, the district court
concluded that it lacked authority to entertain plaintiffs' suit. 
Specifically, the district court pointed out that before seeking
relief in federal court, plaintiffs had initiated two law suits in
the New Hampshire courts contesting the legality of the Town's
action and had been unsuccessful in both. Viewing the 1983 suit
as an effort collaterally to undercut these state court decisions,
the district court held that the Rooker-Feldman doctrine --
pursuant to which "[l]ower federal courts are without subject
matter jurisdiction to sit in direct review of state court
decisions," Wang v. New Hampshire Board of Registration in
Medicine, 55 F.3d 698, 703 (1st Cir. 1995) -- 

deprived it of jurisdiction to entertain plaintiffs' suit.
 On appeal, plaintiffs contend that the district court
misapplied Rooker-Feldman. Concluding that the district court
reached the right result for the right reasons, we affirm.
 I.
 The procedural events antecedent to the initiation of
this 1983 suit had their inception in the winter of 1992. On
March 10, 1992, at the annual Town Meeting of the Town of Conway,
a resolution was adopted which, inter alia, declared certain roads,
including "a portion of Mountain Valley Blvd., to Route 302 to
become public roads pursuant to RSA 231:51 on final acceptance and
recording of dedication by the Selectmen." On April 22, 1992, the
Board of Selectmen executed a Declaration of Taking reciting that
a portion of roadway including Mountain Valley Mall Boulevard was
"being taken for use as a town road under the authority of NHRSA
231:51" in order "to enhance traffic flow in the Town of Conway and
enhance public safety and the health and welfare of the Town." On
May 8, 1992, the Declaration of Taking was filed with the New
Hampshire Board of Tax and Land Appeals. On April 12, 1993, the
Board of Tax and Land Appeals ruled that plaintiffs were entitled
to "no damages as a result of the taking."
 Thereafter, plaintiffs filed two suits in the Carroll
County Superior Court. The first suit -- a statutorily prescribed
mode of judicial review of the "no damages" ruling of the Board of
Tax and Land Appeals -- sought de novo reassessment of damages. 
The second suit challenged the legal efficacy of the Town of
Conway's Declaration of Taking of Mountain Valley Boulevard,
contending that there had been no dedication of the roadway and
that the Declaration of Taking had not adequately described the
roadway.
 Both suits were ruled on by Justice James D. O'Neill,
III, Presiding Justice of the Carroll County Superior Court. 
Justice O'Neill decided the second suit -- the suit challenging the
Declaration of Taking -- first. On July 26, 1996, Justice O'Neill
ruled that the Declaration of Taking was in compliance with the
requirements of New Hampshire law. On February 6, 1997, the New
Hampshire Supreme Court summarily affirmed, and on April 22, 1997,
the New Hampshire Supreme Court denied plaintiffs' motion for
reconsideration.
 On July 17, 1997, the Town of Conway moved for summary
judgment in the damages reassessment suit. On September 23, 1997,
Justice O'Neill granted the Town's motion for summary judgment. 
Key to the court's analysis was what the court had decided in the
Declaration of Taking case which Justice O'Neill characterized as
"a separate case involving the same parties disputing ownership to
Mountain Valley Boulevard." In that case, wrote Justice O'Neill:
 The Court held in pertinent part that
 Mountain Valley Boulevard was dedicated by the
 plaintiffs and accepted by the defendant. See
 Hill, et al. v. Town of Conway, 95-E-86, 66 at
 pp. 6, 13-15 (Carroll Cty. Super. Ct.
 7/26/96). Specifically, the Court found that
 Mountain Valley Boulevard was platted as a
 road on a subdivision plan approved by the
 Conway Planning Board on August 16, 1990; said
 subdivision plan was recorded in the Carroll
 County Registry of Deeds; the Town accepted
 the platted road and easement on the
 subdivision plan by dedication; and the Town
 executed and recorded a dedication of Mountain
 Valley Boulevard as a public road. Id. at 29
 (granting to [sic] the Town's requested
 Findings of Fact #3-7). The Court specified
 that the plat plan in question constituted a
 subdivision within the meaning of RSA 672:14. 
 Order at 29 (granting Town's requested Finding
 of Fact #11, Ruling of Law #1). The Court
 also ruled that by allowing the Town to
 perform winter road maintenance, the
 plaintiffs showed intent to dedicate Mountain
 Valley Boulevard to the Town of Conway. Id.
 (Ruling of Law #7); see also Order at 6.

 The Supreme Court summarily affirmed this
 Court's decision on February 6, 1997, then
 denied the plaintiffs' Motion to Reconsider on
 April 22, 1997. The Court finds that the
 issue(s) disputed in this case is identical to
 that previously litigated by the parties. The
 Court's previous ruling as to dedication and
 acceptance was of essential import to the
 first decision. Additionally, the plaintiffs
 had a full and fair opportunity to litigate
 the issue in the prior action. The issue was
 resolved finally on the merits. Accordingly,
 the plaintiffs are collaterally estopped from
 relitigating the issue of dedication and
 acceptance in the present case. See Aranson
 v. Schroeder, 140 N.H. 359, 368 (1995)
 (setting forth elements of collateral
 estoppel).

 The plaintiffs['] remaining argument is
 that they are entitled to compensation because
 they did not intend to effectuate a
 dedication. As referenced above, however, the
 court has found that the plaintiffs intended
 to dedicate Mountain Valley Boulevard. 
 Notwithstanding that finding, RSA 231:51 and
 the decision of Polizzo v. Town of Hampton,
 126 N.H. 398, 401 (1985), provide that roadway
 dedication can be accomplished by filing with
 a planning board a subdivision plan
 designating said roadway, and then selling
 lots in accordance with said plan. The filing
 of such a subdivision plan exhibits the
 applicant's intent to dedicate. See 4
 Anderson's American Law of Zoning 25.27, p.
 385 ("the filing of a subdivision plat showing
 streets usually is construed as an offer to
 dedicate the land marked for such purpose");
 Harrington v. Manchester, 76 N.H. 347, 349
 (1912). It has been held that one who
 dedicates a roadway is "entitled to no more
 than nominal damages," Walker v. Manchester,
 58 N.H. 438 (1878); Harrington, 76 N.H. at 348
 (emphasis added), or "no more than the
 commissioners awarded." Wilkins v.
 Manchester, 74 N.H. 275 (1907) (emphasis
 added). In the present case, the Board of
 Land and Tax Appeals declined to award the
 plaintiffs damages; therefore, under the above
 principles, the plaintiffs are entitled to no
 further compensation. The plaintiffs[']
 reliance on Dolan v. City of Tigard, 114
 S. Ct. 2309 (1994), is arguably misplaced. In
 Dolan, the petitioner was required, pursuant
 to express conditions, to dedicate a public
 greenway and bicycle path in order to obtain
 approval of a store expansion. No such
 conditions were demanded of the plaintiffs in
 this case; rather, a voluntary dedication and
 acceptance occurred. Therefore, the
 plaintiffs are not entitled to damages under
 either the law of New Hampshire or the Dolan
 decision.

 On January 12, 1998, plaintiffs appealed to the Supreme
Court of New Hampshire, presenting these questions:
 a. Does the Fifth Amendment to the U.S.
 Constitution (applicable to New Hampshire
 through the Fourteenth Amendment), or the New
 Hampshire Constitution, Pt. 1, Art. 12,
 prohibit the taking of private roadway by a
 municipality's assertion of a dedication
 pursuant to N.H.R.S.A. 231:51, without just
 compensation?

 b. Does the Fifth Amendment to the U.S.
 Constitution (applicable to New Hampshire
 through the Fourteenth Amendment), or the New
 Hampshire Constitution, Pt. 1, Art. 12,
 prohibit the taking of private roadway by a
 municipality's assertion of a dedication
 pursuant to N.H.R.S.A. 231:51 where dedication
 results as a matter of law, and without a
 showing that the required dedication was
 related either in nature or extent of [sic]
 the impact of the Plaintiffs' proposed
 development on the public?

 c. Does R.S.A. 231:51 deprive a
 landowner of all property rights retained
 under common law after a dedication, without
 any consideration to just compensation?

 The Supreme Court of New Hampshire, on May 29, 1998,
ruled: "Notice of Appeal is declined. See Rule 7(1)."
 Plaintiffs thereupon filed this 1983 suit. In the
first amended complaint three causes of action were alleged, each
of them challenging the application of R.S.A. 231:51 as
effectuating "an unconstitutional deprivation of Plaintiffs'
private property without just compensation." The first cause of
action -- denominated "Taking Without Just Compensation" --
contended that a dedication pursuant to R.S.A. 231:51 is a "taking"
and that an uncompensated "taking" is unconstitutional. The second
cause of action -- denominated "Due Process -- Lack of Pre-taking
Determination" -- contended that the dedication process embodied in
R.S.A. 231:51 is constitutionally flawed because it does not call
for "an individualized determination hearing to establish that the
required dedication bears a rough proportionality to the impact of
the proposed development," a contention evidently intended to renew
plaintiffs' invocation in the Superior Court of Dolan v. City of
Tigard, 512 U.S. 374 (1994). The third cause of action --
denominated "Due Process and Equal Protection of the Law -- Lack of
Post-taking Compensation Hearing and Appellate Review" --
challenged R.S.A. 231:51 as entailing a denial of "established
adjudicatory procedures, including both a hearing on the merits of
the de novo assessment hearing or a hearing before the N.H. Supreme
Court on appeal," with the result that "while a state remedy may
have been adequate in theory, it was not available in practice, and
by its unavailability denied the Plaintiffs equal protection of the
law, and thus constitutes a taking of the Plaintiffs' property by
the Town of Conway under color of law."
 By way of relief the plaintiffs sought "declaratory
relief that the post-deprivation process, including N.H. Supreme
Court Rule 7(1), as applied to the Plaintiffs' property violates
the Fourth, Fifth and Fourteenth Amendments to the United States
Constitution," and also "a Judgment for the Plaintiffs awarding an
amount of money damages that will fairly compensate said Plaintiffs
for the taking of their real property."
 The defendant Town of Conway moved to dismiss, invoking
the statute of limitations and res judicata.
 The district court, invoking Rooker-Feldman, dismissed
plaintiffs' suit for lack of subject-matter jurisdiction. From
this judgment of dismissal plaintiffs have taken a timely appeal.
 II.
 Plaintiffs, appellants in this court, contend that the
district court's dismissal on Rooker-Feldman grounds was erroneous
in two respects.
 First, appellants note that Feldman only forecloses
district court jurisdiction of claims that are "inextricably
intertwined" with the claims adjudicated in a state court. 
Feldman, 460 U.S. at 483 n.16, 486. Appellants argue that "[n]one
of the three constitutional claims before the District Court could
possibly be considered to be inextricably interwoven with the
Superior Court decision" rejecting appellants' claim for
reassessment of damages -- i.e., appellants' claim for
"compensation" for the alleged "taking." But appellants'
suggestion that the "issue actually addressed by the Superior Court
in the 'compensation' case was not directly the issue of the
constitutionality of the application of RSA 231:51" is hardly
persuasive given the fact that appellants relied on Dolan v. City
of Tigard, a "taking" case, before the Superior Court, and that
Justice O'Neill expressly addressed appellants' reliance on Dolan,
finding it "arguably misplaced" and concluding that "the plaintiffs
are not entitled to damages under either the law of New Hampshire
or the Dolan decision."
 Justice Marshall, concurring in Pennzoil Co. v. Texaco
Inc., 481 U.S. 1, 23, 25 (1987), provided important guidance to
courts determining whether issues are "inextricably intertwined":
 As we have said, "[i]f the constitutional
 claims presented to a United States district
 court are inextricably intertwined" with the
 merits of a judgment rendered in state court,
 "then the district court is in essence being
 called upon to review the state-court
 decision. This the district court may not
 do." District of Columbia Court of Appeals v.
 Feldman, supra, at 483-484, n.16. While the
 question whether a federal constitutional
 challenge is inextricably intertwined with the
 merits of a state-court judgment may sometimes
 be difficult to answer, it is apparent, as a
 first step, that the federal claim is
 inextricably intertwined with the state-court
 judgment if the federal claim succeeds only to
 the extent that the state court wrongly
 decided the issues before it. Where federal
 relief can only be predicated upon a
 conviction that the state court was wrong, it
 is difficult to conceive the federal
 proceeding as, in substance, anything other
 than a prohibited appeal of the state-court
 judgment.

 The pertinence of Justice Marshall's analysis is made
plain in a recent Eighth Circuit opinion (an opinion quoted by the
district court in dismissing appellants' claims in the case at bar)
assessing the impact of Rooker-Feldman in the context of
condemnation litigation. In Snider v. City of Excelsior Springs,
Missouri, 154 F.3d 809, 811-12 (1998), Judge Morris Arnold ruled as
follows:
 Rooker-Feldman precludes a federal action if
 the relief requested in the federal action
 would effectively reverse the state court
 decision or void its holding. Deciding
 whether Rooker-Feldman bars the plaintiffs'
 federal suit therefore requires that we
 determine what the state court held and
 whether the relief that the plaintiffs
 requested in their federal action would void
 the state court's decision or would require us
 to determine that the decision was wrong.

 .....

 The plaintiffs' complaint alleges that the
 defendants violated federal and state laws by
 their actions in the course of the
 condemnation proceeding. They prayed for
 damages, attorneys' fees, and "to have their
 time share interests reinstated in the Elms
 Hotel and Resort." The state court, however,
 had already determined the relevant damages
 from the condemnation and had extinguished
 whatever property interests the plaintiffs may
 have had. For the federal district court to
 order condemnation damages or to reinstate
 property interests would require it to
 determine that the state court had decided the
 condemnation matter wrongly: In other words,
 the relief for which the plaintiffs prayed
 would, if granted, effectively void the state
 court's judgment. Most importantly, the
 federal court would essentially be acting as
 an appeals court reviewing the state court
 judgment, which violates the Rooker-Feldman
 doctrine.

 Appellants, in the face of a Superior Court determination
that they "are not entitled to damages," have sought in their
 1983 suit a "Judgment . . . awarding an amount of damages that
will fairly compensate . . . for the taking of their real
property." In short, as Judge Arnold put the matter, "the relief
for which the plaintiffs prayed would, if granted, effectively void
the state court's judgment." As the district court properly
determined, Rooker-Feldman precludes such an adjudication.
 Appellants' second contention is captioned as follows: 
"The Decision by the N.H. Supreme Court to Decline the Appeal was
Not a Final Judgment, Judicial in Nature, Rendered by the Highest
State Court in which a Decision Could be Had." The thrust of
appellants' argument is that "a declination of subject matter
jurisdiction under Rooker/Feldman is only applicable to a final
judgment or decree of the N.H. Supreme Court," and that "[t]he
declination by the N.H. Supreme Court under its Rule 7 was not such
a final judgment" reviewable by the United States Supreme Court
under 28 U.S.C. 1257.
 Appellants are correct in arguing that the New Hampshire
Supreme Court's Rule 7(1) disposition was not a judgment or decree
reviewable by the United States Supreme Court. But appellants are
not correct in arguing that, within the New Hampshire judicial
framework, Rooker-Feldman applies only to judgments of the New
Hampshire Supreme Court, "the sole appellate court in the State of
New Hampshire having jurisdiction over all courts of inferior
jurisdiction." Rooker-Feldman is keyed to 1257, and 1257
contemplates United States Supreme Court review on certiorari of
"[f]inal judgments or decrees rendered by the highest court of a
State in which a decision could be had" (emphasis added). When a
state supreme court exercises its discretion (whether vested by
statute or rule) to decline to review a judgment of a lower state
court, the judgment of that lower state court is then reviewable by
the United States Supreme Court on certiorari pursuant to 1257. 
See, e.g., Abernathy v. Alabama, 380 U.S. 447 (1965)(certiorari to
the Court of Appeals of Alabama). Moreover, in the unusual
situation in which no appellate court has jurisdiction to review
the trial court's judgment, the writ of certiorari of the United
States Supreme Court runs to that trial court. See, e.g., Thompson
v. City of Louisville, 362 U.S. 199, 202-03 (1960) (certiorari to
the Police Court of Louisville, Kentucky). In harmony with this
settled practice under 1257, "the Rooker-Feldman doctrine
precludes review of lower state court decisions, just as it
precludes review of the decisions of a state's highest court." 
Port Authority PBA v. Port Authority of New York and New Jersey,
973 F.2d 169, 178 (3d Cir. 1992); see also FOCUS v. Allegheny Court
of Common Pleas, 75 F.3d 834, 840 (3d Cir. 1996); cf. Keene Corp.
v. Cass, 908 F.2d 293, 297 (8th Cir. 1990); Worldwide Church of God
v. McNair, 805 F.2d 888, 893 n.3 (9th Cir. 1986); Hale v. Harney,
786 F.2d 688, 691 (5th Cir. 1986).
 In short, following the New Hampshire Supreme Court's
Rule 7(1) discretionary declination to accept appellants' appeal
from the Superior Court's ruling that "plaintiffs are not entitled
to damages under the law of New Hampshire or the Dolan decision,"
appellants could have petitioned the United States Supreme Court
for a writ of certiorari to the Superior Court, placing in issue
the Superior Court's rejection of appellants' Dolan-based federal
claim. But appellants did not pursue that course. Since the
United States Supreme Court had exclusive appellate jurisdiction to
review the final judgment of the Superior Court -- "the highest
court of [New Hampshire] in which a decision could be had" --
Rooker-Feldman instructs that no federal court other than the
United States Supreme Court had jurisdiction to entertain
appellants' federal claim.
 III.
 "Although [28 U.S.C.] 1331 and 1343(3) appear to
create federal court subject-matter jurisdiction for all 1983
cases, there are a few situations where jurisdiction does not
exist. The most important exception is that federal courts do not
have jurisdiction pursuant to 1983 to review the judgments and
decisions of state courts." Erwin Chemerinsky, Federal
Jurisdiction 423 (2d ed. 1994).
 The judgment of the district court is affirmed.